and in the amounts therein specified.    I know of no general law that would authorize any of its officers to make such a contract for it, and I can discover nothing in the act in question which gave them such authority.

The complaint proceeds upon the theory that the town was liable to perform the contract which the commissioners made.    That contract was much broader than they had authority to make.    Hence an averment that it has not been performed by the town does not show a cause of action against the town.    As made by the commissioners, the town was under no obligation to perform it.

If the complaint had alleged that the town refused to issue and negotiate the bonds, or that, having sold them and collected the money thereon, it had refused to apply it to the payment of the amount due on their contract, as by its terms it had through its officers agreed to do, then it might be considered that it had broken a contract that the commissioners were authorized to make for it.    But no 'such action on its part is averred, nor is there any statement or suggestion in the complaint as to why the payments were not made.    For aught that appears, the town may have issued the bonds and diligently attempted to sell them, and may not have been able to do so under the terms imposed by the statute.    For this reason they may have been unable to raise the money, and therefore the payments were not made. If such were the facts, the town had fully performed its obligation under the statute, and the commissioners could not contract that they would do more.

Therefore it is apparent that the facts stated in the complaint do not show that the town has neglected to perform any contract for which it is liable, or that it has not fully performed every obligation imposed upon it by the statute.    For this further reason the demurrer should have been sustained, and the plaintiffs should have been allowed to amend their complaint.

But, inasmuch as in no event could an action be maintained against the town, the complaint should be dismissed, with costs.

Judgment reversed, with costs, and complaint dismissed, with costs.    All concur; SMITH, J., in result.

(86 App. Div. 148.)

### FIELDS v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department.    July 7, 1903.)

1. MASTER AND SERVANT—METHOD OF OPERATING TRAINS—ASSUMED RISK.
    Where an employé is familiar with and has repeatedly observed a rule directing those in charge of a train within the yard limits to be on guard for a train ahead, instead of requiring each crew to protect its train in the rear from approaching trains, he assumes the risk of such method of operation.

2. SAME.
    The principle that, before an employé can be held to have assumed the risk connected with his service, the employer must have performed the duties enjoined on him, does not obtain where the employé is cognizant of the danger and continues his services.

¶ 2. See Master and Servant, vol. 34, Cent. Dig. § 583.

Appeal from Trial Term, Onondaga County.

Action by Alice G. Fields, as administratrix of the estate of William G. Fields, deceased, against the New York Central & Hudson River Railroad Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

W. S. Jenney, for appellant.

Frank Hiscock, for respondent.

SPRING, J. The plaintiff's intestate, William G. Fields, was a freight conductor in the employ of the defendant. He had been in its service on the Mohawk Division for upwards of eight years. Before daylight on the morning of March 6, 1900, he stopped his train, which was going east on track No. 4, on a curve within the yards of the defendant at West Albany. He was sitting in the cupola of the caboose of his train when a freight train, following on the same track, crashed into the caboose, causing his death, and his administratrix has sued to recover damages.

The particular negligence with which the defendant is charged is the keeping in force of an improper or inefficient rule, which reads as follows:

"Yard-limit signs have been erected at Black Rock Cut, east of West Albany, and at the Old Road Curve, west of West Albany. The Block on track No. 4 ends at these signs. Trains occupying track No. 4 inside of yard-limit need not be protected by flagman."

The effect of this rule, if observed, is to place the burden on those in charge of a train running within the yard limits mentioned to be on guard for a train ahead, instead of requiring each crew to protect its train in the rear from approaching trains. It relates to the method of operation, and had long been in vogue, and without detriment to its employés. The claim of the plaintiff is that, if the rule applicable to other parts of the road, and generally in railroading, had been in practice, requiring each conductor to protect his own train, the plaintiff's intestate would have heeded it, and the collision would not have occurred. The proof shows that many railroad companies maintain the rule, for the protection of the train by its own crew against one following in yard limits as well as elsewhere, and the proof was sufficient to require the submission to the jury of the effectiveness and propriety of the rule quoted, except for a principle which we deem controlling.

Fields had been in the railroad business for 26 years, and 8 on this division. He was entirely familiar with this rule, and had repeatedly told his flagman it was unnecessary to flag inside this yard limit, on this track, for an approaching train. He therefore assumed the risks of his employment, and that means those with which he was acquainted. We realize that the principle is a general one that, before an employé can be held to have assumed the risks connected with his service, the employer must have fully performed the duties enjoined upon him. Benzing v. Steinway & Sons, 101 N. Y. 552, 5 N. E. 449; East-

land v. Clarke, 165 N. Y. 420, 427, 59 N. E. 202. This principle does not obtain where the employé is cognizant of the danger and continues his service in the face of that full knowledge. Drake v. Auburn City R. R. Co., 173 N. Y. 476, 482, 66 N. E. 121; Dowd v. N. Y. and O. Ry. Co., 170 N. Y. 459, 63 N. E. 541; Maltbie v. Belden, 167 N. Y. 307, 312, 60 N. E. 645; O'Maley v. South Boston Gaslight Co., 158 Mass. 135, 32 N. E. 1119, 47 L. R. A. 161.

In the Drake Case, supra, the plaintiff's intestate was conductor on a trolley road leading out of the city of Auburn. While standing on the running board of the moving car, in the performance of his duties, he was hit by a leaning tree, one of a row in the street, and killed. He had been over the road more than 200 times as motorman and conductor, and it was held, as matter of law, that he was familiar with the situation, and assumed the danger of the close proximity of the trees as one of the obvious risks of his employment. In commenting upon the principle, the court say that "if, in his opinion, there was peril in operating an open car, it was his duty to have retired from the employment; as he failed to do this, it must be held that he assumed whatever risk there was in the situation."

It is not necessary to refine over much for the purpose of ascertaining whether this principle rests on implied contract, or a distinct act of waiver, or on the two combined. The gist of the principle is that where the employé, fully appreciating the dangerous condition of an appliance, or of certain machinery, or a method of doing the work in all its aspects, elects to continue in the employment and take his chances of receiving injury from the known dangerous condition, he is estopped from mulcting the employer in damages for injuries inflicted because of such defective appliance or method. He willingly continues in the employment, with the dangers in full measure before him, and the rule that the master must first perform his duty before the doctrine of the assumption of risks arises is not applicable. It is unimportant whether the employer has performed his duty or been remiss. If the employé, with entire appreciation of a given dangerous situation, chooses to continue in the employment, he cuts off any recovery for injuries suffered by that particular situation. He makes his own election. It is by his own volition that he remains in the service, and he may not be heard to complain. The master and servant are alike in the wrong, and like tort feasors; neither may charge up his injury to his co-wrongdoer. It may be that, in a flagrantly dangerous case, public policy will not permit a railroad company to assert the doctrine of assumption of risks to relieve itself from liability for injuries to an employé growing out of its adoption of a bad rule or practice, even though the workman was fully aware of it. That is not this case. The rule in question had been in practice for many years, and no injury had resulted from its operation. Other companies adopted other methods, but it does not follow that the use of the one now assailed was fraught with danger. It had stood the test of long operation.

If there was anything especially dangerous on the morning of the catastrophe, by reason of the weather or the slipperiness of the rails, the plaintiff's intestate knew of it. The rule referred to was not im-

perative that he stall his train and wait in his dangerous situation, realizing that an approaching train was liable to come in contact with him. He was by the rule relieved of the necessity of sending back a flagman, not forbidden from so doing. If he deemed that course essential for the protection of his train he was at liberty to pursue it, and it was always incumbent upon him to exercise caution and vigilance to prevent accidents. The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur.